**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MELVIN MASON,                         :
                                      :     Civil Action No. 07-5261 (RBK)
              Petitioner,             :
                                      :
          v.                          :     **OPINION**
                                      :
MICHELLE RICCI, et al.,               :
                                      :
              Respondents.            :


**APPEARANCES:**

Petitioner pro se                    Counsel for Respondents
Melvin Mason                         James F. Smith
New Jersey State Prison              Assistant County Prosecutor
P.O. Box 861                         County of Atlantic
Trenton, NJ 08625                    4997 Unami Boulevard
                                     P.O. Box 2002
                                     Mays Landing, NJ 08330


**KUGLER**, District Judge

        Petitioner Melvin Mason, a prisoner currently confined at

New Jersey State Prison in Trenton, New Jersey, has submitted a

petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  The respondents are Administrator Michelle Ricci and the

Attorney General of New Jersey.

        For the reasons stated herein, the Petition must be denied.

I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> Defendant Melvin Mason and Jerome White formed a drug distribution business operating in Atlantic City. Mason and White used several younger persons including Aaron Reid and Cameron DeJesus to sell the drugs. Mason and White would collect the proceeds, resupply and pay the sellers.
>
> Mason became angry with White over missing money from the drug sales and for allowing Mason to remain in jail, after an arrest, for several days until Mason's wife provided bail.  After briefly investigating the diminished profits, Mason became convinced that White embezzled his money.
>
> Mason retrieved his .25 caliber pistol and gave the weapon to DeJesus.  Mason first ordered Reid to shoot White, but Reid was too scared.  Mason explained that he could not shoot White because he was on parole. He then ordered DeJesus to shoot White.
>
> Mason, DeJesus and Reid found White in a parked automobile.  Mason walked around and stood outside the driver's door while DeJesus and Reid entered the car. DeJesus sat behind White and Reid sat behind the front passenger seat.  After White failed to reply to Mason's question: "[w]here['s] the money," DeJesus fired two bullets into White's head and ran with Reid from the scene.  Mason told Reid to go back and "clean [White] out."  Reid re-entered the car and took White's ring from his finger, and fled.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

(Opinion of Superior Court of New Jersey, Appellate Division, at 4-5 (April 11, 2002).)

B.   <u>Procedural History</u>

Petitioner was convicted in the Superior Court of New Jersey, Law Division, Atlantic County, pursuant to a jury trial, of murder, conspiracy to commit murder, possession of a firearm for an unlawful purpose, and unlawful possession of a firearm. Petitioner was sentenced to an aggregate term of life imprisonment, plus a consecutive five year term, with an aggregate thirty-two-and-one-half-year parole bar.

On April 11, 2002, the Superior Court of New Jersey, Appellate Division, affirmed Petitioner's conviction and sentence.  On July 16, 2002, the Supreme Court of New Jersey denied certification.

On November 12, 2002, Petitioner filed a petition for post-conviction relief in the trial court.  Following a non-evidentiary hearing, the trial court denied relief on October 21, 2004.  On November 28, 2006, the Appellate Division affirmed the denial of post-conviction relief.  The Supreme Court of New Jersey denied certification on April 4, 2007.  <u>See</u> <u>State v. Mason</u>, 190 N.J. 392 (2007).

This Petition followed.  Respondents have answered on the merits.  Petitioner has declined to file a Reply.  This matter is now ready for disposition.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an

4

unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL

1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);

6

United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),
cert. denied, 399 U.S. 912 (1970).

III.   ANALYSIS

A.   Evidentiary Issues

It is well-established that the violation of a right created
by state law is not cognizable as a basis for federal habeas
relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have
stated many times that 'federal habeas corpus relief does not lie
for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S.
764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief
for any errors in state law evidentiary rulings, unless they rise
to the level of a deprivation of due process.  Estelle, 502 U.S.
at 70 ("'the Due Process Clause guarantees fundamental elements
of fairness in a criminal trial'") (quoting Spencer v. Texas, 385
U.S. 554, 563-64 (1967)

For a habeas petitioner to prevail on a claim that an
evidentiary error amounted to a deprivation of due process, he
must show that the error was so pervasive as to have denied him a
fundamentally fair trial.  Keller v. Larkins, 251 F.3d 408, 413
(3d Cir.), cert. denied, 534 U.S. 973 (2001).

1.   Exclusion of Co-Defendant's Statement

Petitioner contends that he was deprived of his due process
right to a fair trial when the trial court excluded testimony by
witness Aaron Reid that co-defendant DeJesus had told Reid that

7

he shot the victim "because he talks too much."  (Petitioner's
Ground B.)  Petitioner raised this claim on direct appeal.  The
Appellate Division rejected it.

> Mason argues that he was denied a fair trial
> because the trial judge excluded DeJesus's statement
> that White talked too much.  Defense counsel asked Reid
> whether he had asked DeJesus why he shot White.  Reid
> answered that DeJesus said "[b]ecause he talks too
> much."  The judge ruled this statement inadmissible
> hearsay.  Mason wanted this statement admitted because
> it demonstrated a motive for the shooting that was
> different from the State's claim that the sole reason
> DeJesus shot and killed White was that Mason had
> ordered DeJesus to shoot White.
>
> DeJesus's statement contains an implicit
> confession, that he shot Mason.  Thus, the statement
> subjected the declarant to "criminal liability" and
> rendered the hearsay statement admissible as a
> declaration against interest.  N.J.R.E. 803(c)(25).
> Mason contends that this statement was crucial to the
> defense and if admitted would have led to "reasonable
> doubt about [Mason] being an accomplice."  Therefore,
> Mason argues that the error "had the capacity to
> produce an unjust result."  We disagree.
>
> The evidence of Mason's complicity was
> overwhelming.  Mason was the leader of the group that
> confronted White.  He was the oldest of the group and
> it was Mason's gun that was used to kill White.  Mason
> led the group to the car in order to confront White,
> and after the shooting, Mason directed Reid to return
> to the car "to clean" White out.  We cannot conceive of
> DeJesus's statement altering the verdict.  Any error
> was harmless beyond a reasonable doubt.  State v.
> Macon, 57 N.J. 325, 338-41 (1971).

(Opinion of Appellate Division at 5-6 (April 11, 2002).)

This Court agrees that the evidence against Petitioner was
overwhelming and that the error, if any, was harmless.  To
summarize the evidence, briefly:

Margenese Bell testified that Petitioner questioned her about missing money, that Petitioner and either Reid or DeJesus went to retrieve a gun from Latoya Walker's home, that Petitioner said he couldn't hold the gun because he was on parole, that she saw Petitioner hand the gun to DeJesus, that Petitioner said they should walk over to Bell's house (where her mother and the victim were sitting in a car), that Petitioner said to Reid and DeJesus that somebody had to shoot White, that Petitioner told Reid to shoot White and, when Reid balked, that Petitioner told DeJesus to shoot White, that Petitioner said he couldn't do it because he was on parole, and that he then told Bell to get her mom out of the car and go in the house. Bell testified that she saw Petitioner, DeJesus, and Reid at the car with the victim. Bell testified that she went in the house with her mother and then heard two gunshots. (Tr. of July 13, 1999, at 112-131.)

Denise Thomas, Bell's mother, testified that she was in the car with the victim when she saw her daughter Margenese approach the car with Petitioner, Reid, and DeJesus. Her testimony paralleled that of her daughter about the events at the car. (Tr. of July 13, 1999, at 73-79.)

Pedro Pacheco testified that he knew Petitioner kept a .25 caliber handgun at Latoya Walker's home. (Tr. of July 14, 1999, at 32-37.) Hector Velez, the jailhouse informant, testified that Petitioner approached him to talk about the case. Velez

9

testified that, in describing the incident, Petitioner related, "I told him to shoot him."  Velez testified that he and Petitioner talked about accomplice liability.  Velez also testified that Petitioner told him he told a woman and her mother to go into the house before the shooting.  (Tr. of July 14, 1999, at 78-83.)

Police Sergeants Timothy Friel and Bruce DeShields testified to the statements they took from Petitioner while he was in custody in New York on a separate matter, in which Petitioner revealed that he knew the victim had been shot in the head, remarked that the most time he would do for his part in the offense was five years, and stated that he did not shoot the victim, but did not otherwise deny being present.  (Tr. of July 15, 1999, at 46-65; Tr. of July 19, 1999, at 12-30.)

Aaron Reid, who had already pleaded guilty to conspiracy to commit murder for his part in this homicide, gave testimony about the incident that paralleled Margenese Bell's in all material details.  (Tr. of July 15, 1999, at 116-130.)

In view of all of this consistent testimony about the events surrounding the homicide and about Petitioner's role, the conclusion of the state court that the excluded statement did not deprive Petitioner of a fundamentally fair trial is neither contrary to nor an unreasonable application of federal law, nor is it based on an unreasonable determination of the facts in

10

light of the evidence presented.  Petitioner is not entitled to relief on this claim.

   2.   Evidence of Other Criminal Offenses

   Petitioner contends that he was deprived of his due process right to a fair trial by the admission of evidence of his involvement in other criminal offenses, including: (1) that Petitioner was involved in illegal drug trafficking, (2) that Petitioner was in jail in New York shortly after the homicide took place, and (3) that Petitioner was on parole, at the time of the homicide, after serving eight years in prison.  No limiting instruction was given.  (Petitioner's Ground C.)

   Petitioner raised this claim on direct appeal.  The Appellate Division found that the claim was without sufficient merit to warrant discussion in a written decision and denied relief.

   Here, state law permits evidence of other bad acts under certain circumstances.  See N.J.R.E. 404(b).  Petitioner has pointed this Court to no Supreme Court precedent in support of his position that admission of the evidence amounted to a violation of his due process rights, and this Court has located none.  To the contrary, in Estelle, the Supreme Court upheld the admission of evidence of prior injuries, that were probative on the question of intent in a trial for infant murder, and refused habeas relief for a deficient limiting instruction.

"Admission of 'other crimes' evidence provides a ground for federal habeas relief only if 'the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial.'" Bronshtein v. Horn, 404 F.3d 700, 730-31 (3d Cir. 2005) (quoting Lesko v. Owens, 881 F.2d 44, 52 (3d Cir. 1989)).

> When evidence of a defendant's other crimes is introduced ..., there is sometimes "a substantial danger of unfair prejudice" because the jury may consider the evidence as proof of bad character or propensity to commit the crime charged. United States v. Murray, 103 F.3d 310, 316 (3d Cir.1997), cert. denied, 525 U.S. 911, 119 S.Ct. 254, 142 L.Ed.2d 209 (1998). To alleviate this risk, counsel may request a cautionary instruction. See generally Lesko v. Owens, 881 F.2d 44, 55 (3d Cir.1989), cert. denied, 493 U.S. 1036, 110 S.Ct. 759, 107 L.Ed.2d 775 (1990). In some circumstances, such an instruction may be strongly advisable; in others, counsel may reasonably conclude that it is strategically preferable to omit such a request since the instruction might have the undesired effect of highlighting the other crimes evidence.

Buehl v. Vaughn, 166 F.3d 163, 170 (3d Cir. 1999).

Here, evidence about the drug trafficking activities of Petitioner and the victim, including Petitioner's arrest just before the homicide, was essential to putting the homicide into a context and establishing Petitioner's motive. The testimony that Petitioner stated he could not handle the gun because he was on parole provided an explanation as to why DeJesus, rather than Petitioner, shot the victim. Thus, the probative value of this evidence clearly outweighs its inflammatory content. Nevertheless, Petitioner argues that the jury should not have

heard his statements to his co-conspirators that he just finished serving eight years and his statement to investigators that they could take him back to jail after their interrogation of him.  In view of all the other testimony about Petitioner's criminal activities, the admission of these statements did not deprive Petitioner of a fundamentally fair trial.  Petitioner is not entitled to relief on this claim.

     3.  <u>Hector Velez Testimony</u>

Jailhouse informant Hector Velez, who worked as an inmate paralegal at the jail, testified that Petitioner approached him and talked to him about his pending criminal case, including such details as telling the two women to go into the house and asking somebody else to do the actual shooting.  Velez further testified that Petitioner showed him a confession that he had drafted for one of his co-conspirators to sign.  Finally, Velez testified that Petitioner talked with him about the scope of accomplice liability.

Petitioner contends that Velez approached him in jail and asked him about his case, acting as an agent of the government to question him in violation of his Sixth Amendment right, as described in <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), not to be questioned without being advised of, and waiving, his right to counsel.  In addition, Petitioner contends that the admission of

Mr. Velez's testimony deprived him of his Fourteenth Amendment right to a fair trial.  (Petitioner's Ground F.)

Petitioner raised this claim on direct appeal.  The Appellate Division found that the claim was without sufficient merit to warrant discussion in a written decision and denied relief.

When a confined, indicted accused makes statements to a fellow prisoner "who is acting by prearrangement as a government agent," such a conversation may violate the accused's Sixth Amendment right to counsel.  See United States v. Henry, 447 U.S. 264 (1980).  Here, there is no evidence that Velez was acting, by prearrangement, as a government agent.  To the contrary, the evidence is that Velez's conversations with Petitioner took place in the summer of 1998 and that Velez contacted the prosecutor about them, for the first time, almost a year later in May 1999, hoping for some assistance in his upcoming parole hearing.  (Tr. of July 14, 1999, at 91.)  In addition, the evidence is that this case is the only case in which Velez acted as an informant.  (Tr. of July 14, 1999, at 88.)  An accused does not make out a Sixth Amendment violation when a neutral inmate reports conversations to the government.  Henry, 447 U.S. at 275, n.13; Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).  Thus, the conversations with Velez did not violate the Sixth Amendment.

Nor was there any violation of Petitioner's right to due process under the Fourteenth Amendment.  Velez acted as a private person, not a government agent, when conversing with Petitioner about the circumstances of the homicide.  Moreover, Velez's testimony was cumulative; witnesses Bell, Thomas, and Reid, all of whom were present during the events in question, had all testified to Petitioner's actions in connection with the homicide.  To the extent Petitioner is attempting to assert that the testimony of Velez is false, Petitioner provides no support whatsoever for that contention.  Petitioner is not entitled to relief on these claims.

B.   <u>Jury Instructions</u>

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

15

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it generally is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).  "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless."  Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is

16

> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal

quotations and citations omitted).

However, a jury instruction that "reduce[s] the level of

proof necessary for the Government to carry its burden [of proof

beyond a reasonable doubt] is plainly inconsistent with the

constitutionally rooted presumption of innocence." Cool v.

United States, 409 U.S. 100, 104 (1972). "[T]rial courts must

avoid defining reasonable doubt so as to lead the jury to convict

on a lesser showing than due process requires." Victor v.

Nebraska, 511 U.S. 1, 22 (1994); see also Cage v. Louisiana, 498

U.S. 39, 41 (1990). As the Supreme Court explained in Victor,

> so long as the court instructs the jury on the
> necessity that the defendant's guilt be proved beyond a
> reasonable doubt, the Constitution does not require
> that any particular form of words be used in advising
> the jury of the government's burden of proof. Rather,
> taken as a whole, the instructions [must] correctly
> conve[y] the concept of reasonable doubt to the jury.

Victor, 511 U.S. at 6 (citations and internal quotation marks

omitted).

"[A] misdescription of the burden of proof ... vitiates all

the jury's findings. Sullivan v. Louisiana, 508 U.S. 275, 281

(1993) (emphasis in original). Such an error is considered

structural and thus is not subject to harmless error review. See

id. at 280-82. But see Neder v. United States, 527 U.S. 1, 8-11

17

(1999) (applying harmless-error analysis where jury was not instructed on an element of an offense).

Petitioner contends that the jury instruction on accomplice liability was flawed in that the instruction failed to state that Petitioner's guilt as an accomplice is predicated on his own state of mind, intent, and actions.  More specifically, Petitioner contends that the trial court should have given an instruction on lesser-included offenses and that Petitioner could be found guilty of a lesser offense than the other co-conspirators based upon his own state of mind, intent, and actions.  (Petitioner's Grounds D and E.)

Petitioner raised these related claims on direct appeal. The Appellate Division found that the claims were without sufficient merit to warrant discussion in a written decision and denied relief.

Here, in connection with the initial instructions on the murder charge, the trial court explicitly instructed that the jury must find that the defendant acted "purposely or knowingly," and defined those terms.  (Tr. of July 20, 1999, at 42-46.) Petitioner does not challenge the adequacy of these instructions. Thereafter, in the separate charge on accomplice liability, the trial court explained that a person is an accomplice of another person in the commission of an offense "if, with the purpose of promoting or facilitating the commission of the offense he

18

solicits such other person to commit it or aids or agrees or
attempts to aid such other person in planning or committing it."
(Tr. of July 20, 1999, at 55.)  The court repeatedly emphasized
the burden of the state to establish Petitioner's state of mind
as an accomplice.

     Third, that this defendant's purpose was to
promote or facilitate the commission of the offense or
offenses committed by DeJesus.

     Fourth, that this defendant possessed the criminal
state of mind that is required to prove -- to be
proved, I should say, against the person who actually
committed the act.

     Remember that one acts purposely with respect to
his conduct or a result thereof if it is his conscious
object to engage in conduct of that nature or to cause
such a result.

...

     If you find that this defendant, with the purpose
of promoting or facilitating the commission of the
offense or offenses solicited DeJesus to commit it or
them or aid -- aided or agreed or attempted to aid him
in planning or committing any offense, then you should
consider him as if he committed the crime himself.

...

     In order to convict the defendant as an accomplice
to a crime charged, you must find that the defendant
had the purpose to participate in that particular
crime.  He must act with the purpose of promoting or
facilitating the commission of the crime with which he
is charged.

     It's not sufficient to prove only that the
defendant had knowledge that another person was going
to commit the crime charge[d].  The State must prove
that it was the defendant's conscious object that the
specific conduct charged be committed.

So that in some -- in order to find the defendant guilty of a crime, the State must prove beyond a reasonable doubt that the person referred to as Cameron DeJesus committed the crime of murder, that this defendant's purpose was to promote or facilitate the commission of the offenses, that this defendant solicited him to commit it and did aid or agree or attempt to aid him in planning or committed the [offense] for this defendant, possessed the criminal state of mind that is required to be proved against the person who actually committed the criminal act.  And the same thing is true with respect to any other of the alleged conduct in the indictment, other than murder.

(Tr. of July 20, 1999, at 55-59.)

In New Jersey, "jury instructions on accomplice liability must include an instruction that a defendant can be found guilty as an accomplice of a lesser included offense even though the principal is found guilty of the more serious offense." State v. Norman, 151 N.J. 5 (1997) (citing State v. Bielkiewicz, 267 N.J. Super. 520 (App. Div. 1993)).  Here, however, the trial court found that there was no basis to charge lesser included homicide offenses with respect to Petitioner.  On appeal, the Appellate Division found no fault with that conclusion.  Thus, Petitioner would have been entitled to a Norman/Bielkiewicz charge only if there were a basis to charge lesser included homicide offenses.

In Beck v. Alabama, 447 U.S. 625, 635 (1980), the Supreme Court held that, in a capital case, a trial court must give a requested charge on a lesser included offense where it is supported by the evidence.  The Court left open the question of whether instructions on lesser included offenses were required in

20

non-capital cases.  Id.  The Court of Appeals for the Third Circuit has held that trial courts must charge a lesser included offense so that the jury does not convict a defendant of a crime more serious than the jury believes the defendant actually committed merely because the jury believes the defendant had some degree of involvement and does not want to set the defendant free.  Vujosevic v. Rafferty, 844 F.2d 1023, 1027 (3d Cir. 1988) (citing Keeble v. United States, 412 U.S. 205, 212-13 (1973)).  But see Geschwendt v. Ryan, 967 F.2d 877, 884 n.13 (3d Cir.) (observing that the Supreme Court, in Schad v. Arizona, 501 U.S. 624 (1991), cast doubt on the theory that due process requires the court to instruct on a lesser included offense in non-capital offenses), cert. denied, 506 U.S. 977 (1992).  Other circuits have held that the failure to give lesser included offense instructions in a non-capital case does not present a constitutional question.  See Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir. 1990), cert. denied, 501 U.S. 1253 (1991);  Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975).

Under New Jersey law, an instruction as to a lesser offense is warranted where the facts provide a rational basis for such a conviction.  N.J.S.A. 2C:1-8e ("The court shall not charge the jury with respect to a lesser included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."); State v. Choice, 98 N.J. 295, 298-99 (1985).

However, a charge on a lesser included offense should not be given where it would invite the jury to engage in sheer speculation.  State v. Mendez, 252 N.J. Super. 155, 159 (App. Div. 1991), certif. denied, 127 N.J. 560 (1992).

This Court observes that the states are free to define criminal offenses in any way they see fit, within certain constitutional limitations, even through their lower courts. Smith v. Horn, 120 F.3d 400, 415 (1997) (citing Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997)), cert. denied, 522 U.S. 1109 (1998).  Under New Jersey law, a person commits murder if the actor purposely or knowingly causes death or serious bodily injury resulting in death.  N.J.S.A. 2C:11-3(a)(1), (2). Criminal homicide constitutes the lesser-included offense of aggravated manslaughter when "[t]he actor recklessly causes death under circumstances manifesting extreme indifference to human life."  N.J.S.A. 2C:11-4a(1).  It is second-degree manslaughter if the criminal homicide is committed only "recklessly" or "in the heat of passion."  N.J.S.A. 2C:11-4b(1).

The Appellate Division did not explain its rationale for rejecting this claim.  Nevertheless, it is clear that Petitioner is not entitled to relief on this claim.  Taken as a whole, the jury instructions properly described those elements the state must prove in order to find Petitioner guilty as an accomplice to murder.  The conclusion of the Appellate Division that Petitioner

was not entitled, under state law, to instructions on lesser-included offenses is binding on this court.  This Court agrees that the proofs at trial did not require the court to instruct with respect to lesser-included homicide offenses; the proofs at trial would not have provided a "rational basis" for the jury to convict of a lesser-included offense.  Moreover, even if the state court decision were erroneous, which this Court does not find, any error did not involve "an unreasonable application" of clearly established federal law, as determined by the Supreme Court of the United States, as demonstrated by the disagreements among the Circuit Courts of Appeals as to whether instructions on lesser-included offenses must be given in non-capital cases. Petitioner is not entitled to relief on this claim.

C.   Sufficiency of the Evidence of Conspiracy

Petitioner contends that the only evidence of conspiracy was the testimony of jailhouse informant Hector Velez, who worked at the jail as an inmate paralegal.  Petitioner contends that he was deprived of his due process right to a fair trial by the failure of the state to establish a conspiracy between Petitioner and co-defendant DeJesus, who actually "pulled the trigger" to kill the victim.  (Petitioner's Ground G.)  The Court construes this as an allegation that there was insufficient evidence to sustain the conspiracy conviction.

Petitioner raised this claim on direct appeal.  The Appellate Division found that the claim was without sufficient merit to warrant discussion in a written decision and denied relief.

A claim that the jury's verdict was against the weight of the evidence raises a due process concern.  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324, n.16.  See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  As noted above, state court factual determinations are presumed to be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000).

Under New Jersey law, a person is guilty of conspiracy with another person or persons to commit a crime, "if with the purpose of promoting or facilitating its commission he: (1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime ... ; or (2) Agrees to aid such other person or persons in the planning or

commission of such crime or of an attempt or solicitation to commit such crime." N.J.S.A. 2C:50-2a.

Petitioner's contention that the only evidence of conspiracy was provided by Velez is specious. Evidence establishing the conspiracy to commit murder was provided by multiple witnesses, including witnesses Bell, Thomas, and Reid. Petitioner is not entitled to relief on this claim.

D. <u>Ineffective Assistance of Counsel</u>

    1. <u>Trial Counsel</u>

Petitioner contends that he was deprived of the effective assistance of trial counsel. Specifically, Petitioner contends that trial counsel was ineffective in the following particulars: (a) trial counsel met with Petitioner only once prior to trial and never discussed any trial strategy; (b) trial counsel failed to investigate or interview two witnesses who could have testified that Petitioner's co-defendant Cameron DeJesus had stated that he (DeJesus) killed the victim because he owed him money; (c) trial counsel failed to investigate or interview a witness who could have testified that prosecution witness Pedro Pancheco owned the murder weapon and brought it to her house for her to hold for him in case he needed it for his drug dealings; (d) trial counsel failed to investigate whether prosecution witness and jailhouse informant Victor Velez received any favorable treatment for his testimony; (e) trial counsel was

physically ill throughout the trial, so much so that another attorney was brought in to represent Petitioner at sentencing; (f) trial counsel failed to move for suppression of Petitioner's statements made to New Jersey investigators while Petitioner was in custody in New York, which statements were allegedly taken in violation of the terms of New York court orders; and (g) trial counsel failed to move for a limiting instruction with respect to "other crimes" evidence.  (Petitioner's Ground A.)

Petitioner raised some of these claims in a motion for new trial, before his sentencing.  (Tr. of Motion (Nov. 5, 1999).) Specifically, he raised the claim that trial counsel met with him only once, that trial counsel failed to interview certain witnesses, that trial counsel was ill during the trial.  He also objected to representation by new counsel at sentencing.[2] Petitioner's sentencing counsel indicated that he had reviewed the entire file of trial counsel and videotapes of the trial. The judge denied the motion for new trial and proceeded to sentencing with the newly-appointed counsel.

Petitioner raised these claims, again, and raised the other claims asserted here in his state petition for post-conviction relief.  After a non-evidentiary hearing, the trial court denied relief.  The trial court held at the hearing that there was no

---

[2] It is undisputed that trial counsel was ill after the conclusion of the trial and was not able to represent Petitioner at sentencing.

basis to charge the jury on lesser-included offenses, and thus,
that there was no ineffective assistance of trial counsel for
failing to request the instruction.  (Tr. of Petition for Post-
Conviction Relief at 45 (Sept. 20, 2004).)  At the hearing, the
trial judge denied relief as to all claims, except he took under
advisement that claim that trial and appellate counsel were
ineffective in failing to argue that statements made to law
enforcement officials while in the custody of the State of New
York were not given freely, knowingly, and voluntarily.  The
trial judge later issued a supplemental letter opinion with
respect to the admissibility of those statements.

> The statements at issue were made during
> interviews conducted by the Atlantic County
> Prosecutor's Office on October 23, 1996 and November 7,
> 1996 at the Kings' County District Attorney's Office in
> Brooklyn, New York.  To obtain the interviews, a Kings
> County District Attorney submitted Affirmations to the
> Supreme Court of New York and obtained Orders for the
> defendant's transfer. ...  The Orders contained the
> following language: "Upon ... affirmation ..., and
> provided the ... inmate signs the written consent
> included in this order thereby agreeing to be released
> into the temporary custody of police officers,
> including detective investigators, representing the
> Office of the Kings County District Attorney ..."

> A Miranda hearing was conducted before the
> Honorable Manuel H. Greenberg on July 12, 1999 wherein
> the defendant sought to suppress statements he made
> during the aforedescribed interviews.  At that time
> counsel argued that because the Affirmations and Orders
> said, "[t]he inmate will not be questioned concerning
> the prosecution of any criminal action against the
> inmate in the absence of the inmate's attorney," the
> interview was improper as the defendant was a suspect
> in the murder of Jerome White, and the interview was

conducted outside the presence of defense counsel.
Judge Greenberg denied the motion saying:

> "I really don't think that the details of the
> affirmations and order signed in New York are
> of any particular moment here.  We're not
> dealing with New York law in any respect.
> We're dealing with whether the defendant was
> properly advised of his constitutional
> rights, understood his rights, waived his
> rights, and made voluntary statements.
> Obviously, the parties were aware that the
> defendant was going to be -- was going to be
> questioned by investigators from New Jersey.
> But the ... New York orders, I think, have no
> relevance really to the situation that's at
> hand, which is the determination as to
> whether or not he was -- if in custody, which
> he was, advised of his rights, understood his
> rights, and waived his rights. ...  I find
> that the defendant's Miranda rights were
> complied with.  He was advised of his rights,
> understood his rights, made voluntary
> statements which would be admissible subject
> to any other objections."

At oral argument on September 20, 2004, counsel
made the very same argument as well as the argument
raised in the Brief in Support of Petition for Post-
Conviction Relief.  That is, that the defendant had
implicitly invoked his right to remain silent because
he did not sign any consents as required by the Orders
and that trial counsel's failure to raise this argument
was objectively unreasonable.  No law was cited for the
proposition that a defendant may invoke his right to
remain silent implicitly or that the State of New York
could invoke that right implicitly on his behalf.  Nor
does the record indicate whether the defendant was
aware at the time of his transport that the Order
included a consent provision for his signature.
Rather, it was argued that the implicit invocation of
the right to remain silent amounted to an ambiguous
request for an attorney ... .

The Prosecutor responded that a statement made in
compliance with Miranda, as the statements at issue
were, is not made violative based on "technical

irregularities in the manner by which the defendant is
made available for questioning ... ." ...

In the instant case, it is unknown whether the
Atlantic County Prosecutors even saw the Affidavits or
Orders that allowed them to interview the defendant.
It is clear, however, that New York officials prepared
those documents, presumably pursuant to New York's
procedural rules.  If there was any illegality due to
the fact that the defendant did not sign the Orders,
that illegality was not exploited to obtain the
defendant's statement.  Rather, the defendant was
advised of his rights pursuant to Miranda v. Arizona,
knowingly and voluntarily waived those rights and
agreed to answer questions. ...  The fact of the matter
is that he never requested an attorney ambiguously,
implicitly or directly.  So, any argument by trial or
appellate counsel that the defendant's statements made
to Atlantic County investigators while in the custody
of the State of New York were not made knowingly or
voluntarily would have failed and, therefore, would not
have altered the outcome of the case.  Nor was
counsel's performance deficient in that regard.

(Resp. Ex. Ra125 at 1-3 (Sept. 30, 2004) (citations omitted).)

Citing Strickland v. Washington, 466 U.S. 668 (1984), the state

PCR court found that Petitioner had failed to present a prima

facie case of ineffective assistance, was not entitled to an

evidentiary hearing, and was not entitled to relief.  The

Appellate Division affirmed, stating that it was in "substantial

agreement" with the lower court.  (Opinion of App. Div. (Nov. 28,

2006).)  The Supreme Court of New Jersey denied certification.

The Counsel Clause of the Sixth Amendment provides that a

criminal defendant "shall enjoy the right ... to have the

Assistance of Counsel for his defence."  U.S. Const. amend. VI.

The right to counsel is "the right to effective assistance of

29

counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Strickland at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the

facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

Here, Petitioner has failed entirely to establish the "prejudice" prong of the Strickland test.  For example, while complaining that trial counsel met with him only once before trial, he fails to explain how, but for the lack of meetings, the outcome would have been different.  Similarly, Petitioner failed to create a record as to the scope of the investigation performed by counsel or as to the testimony that would have been given by the witnesses Petitioner says should have been interviewed.  In any event, the testimony by other witnesses, including Bell, Thomas, Reid, and Velez, is so powerful, that there is not a reasonable probability that contradictory testimony regarding the ownership of the murder weapon, or regarding DeJesus's statements about why he shot the victim, would have led to a different outcome.

31

Petitioner argues that trial counsel failed to investigate whether jailhouse informant Velez received favorable treatment for his testimony, but the record reveals that Velez was examined and cross-examined with respect to this issue.  (Tr. of July 14, 1999, at 82-85.)  There is no evidence that trial counsel was ill during the trial or that any illness impaired his performance at trial or caused Petitioner any prejudice.  The failure to request a limiting instruction with respect to "other crimes" evidence did not create a reasonable probability that, but for that failure, the outcome would have been different.

Finally, the failure to move for suppression of Petitioner's statements to investigators did not create a reasonable probability that, but for that failure, the outcome would have been different.  Again, the testimony of other witnesses was so compelling that the enumerated deficiencies by trial counsel, if indeed they fell below an objective standard of reasonable professional assistance, did not create a reasonable probability that, but for those errors, the outcome would have been different.

Moreover, this Court agrees that there was no error with respect to admission of the statements made to New Jersey investigators while Petitioner was in custody in New York.

Pursuant to the Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth

Amendment, "No person ... shall be compelled in any criminal case to be a witness against himself ... ."  In Miranda v. Arizona, the Supreme Court of the United States held that:

> when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required.  He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.  Opportunity to exercise these rights must be afforded to him throughout the interrogation.  After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.  But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

384 U.S. at 478-79 (footnote omitted).

A waiver may be made orally or may be implied from a suspect's conduct.  See North Carolina v. Butler, 441 U.S. 369, 373 (1979); United States v. Cruz , 910 F.2d 1072, 1080 (3d Cir. 1990), cert. denied, 498 U.S. 1039 (1991).  To introduce into evidence a suspect's statement made during custodial interrogation, the government must establish, by a preponderance of the evidence, a voluntary waiver of Miranda rights.  Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).  This is a rule of

constitutional dimension, violation of which may justify issuance of a writ of habeas corpus.  See generally Dickerson v. United States, 530 U.S. 428 (2000).

> Once warnings have been given, the subsequent
> procedure is clear.  If the individual indicates in any
> manner, at any time prior to or during questioning,
> that he wishes to remain silent, the interrogation must
> cease.  At this point he has shown that he intends to
> exercise his Fifth Amendment privilege; any statement
> taken after the person invokes his privilege cannot be
> other than the product of compulsion, subtle or
> otherwise.  Without the right to cut off questioning,
> the setting of in-custody interrogation operates on the
> individual to overcome free choice in producing a
> statement after the privilege has been once invoked.

Miranda, 384 U.S. at 473-74.  A defendant's right to cut off questioning must be "scrupulously honored."  Michigan v. Mosley, 423 U.S. 96, 103-04 (1975).

"The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry.  But ... '[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare.'"  Dickerson, 530 U.S. at 444.

"[T]he ultimate issue of 'voluntariness' is a legal question requiring independent federal determination," and is thus not subject to the § 2254(d) presumption of correctness.  Miller v. Fenton, 474 U.S. 104, 109-110 (1985).

> The Supreme Court has made clear that a statement
> is involuntary when the suspect's "will was overborne
> in such a way as to render his confession the product

> of coercion." <u>Arizona v. Fulminante</u>, 499 U.S. 279, 288,
> 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In determining
> whether a statement is voluntary, Supreme Court
> precedent requires consideration of "the totality of
> all the surrounding circumstances--both the
> characteristics of the accused and the details of the
> interrogation." <u>Dickerson v. United States</u>, 530 U.S.
> 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)
> (quoting <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226,
> 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). These
> surrounding circumstances include "not only the crucial
> element of police coercion, <u>Colorado v. Connelly</u>, 479
> U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986),"
> but may also include "the length of the interrogation,
> its location, its continuity, the defendant's maturity,
> education, physical condition, and mental health."
> <u>Withrow v. Williams</u>, 507 U.S. 680, 693, 113 S.Ct. 1745,
> 123 L.Ed.2d 407 (1993) (some internal citations
> omitted).

<u>Lam v. Kelchner</u>, 304 F.3d 256, 264 (3d Cir. 2002). "[S]ubsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the <u>Miranda</u> warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record and if the other circumstances enumerated in § 2254(d) are inapplicable." <u>Dickerson</u>, 474 U.S. at 117.

Here, the state court found that there was no implied or ambiguous request for counsel, and this Court agrees. The New Jersey detectives fully apprised Petitioner of his <u>Miranda</u> rights and Petitioner knowingly waived his rights. (Tr. of <u>Miranda</u> motion (July 12, 1999).) Petitioner does not dispute this, but

relies on the language of a New York court order permitting the interrogation which required the presence of counsel as well as Petitioner's consent to transportation for the interrogation. This order was obtained by New York authorities and there is no evidence that Petitioner even was aware of the order's existence or terms.  The state court's determination that Petitioner knowingly waived his <u>Miranda</u> rights and voluntarily gave statements to the New Jersey detectives is neither contrary to, nor an unreasonable application of, clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Finally, considering the alleged deficiencies in the aggregate, there is not a reasonable probability that, but for the alleged errors, the outcome would have been different. Petitioner is not entitled to relief on his claim of ineffective assistance of trial counsel.

2.   <u>Appellate Counsel</u>

Petitioner contends that he was deprived of the effective assistance of appellate counsel because appellate counsel failed to raise on direct appeal the claim Petitioner raised in his state petition for post-conviction relief.  (Petitioner's Ground H.)

36

In his state petition for post-conviction relief, Petitioner asserted that his appellate counsel failed to provide effective assistance because he failed to assert on direct appeal the claims that trial counsel was ineffective because (a) trial counsel failed to object to the prosecutor's statement in closing that the jury could infer that Petitioner instructed DeJesus to shoot White when Petitioner stepped back from the car, and (b) trial counsel failed to object to the prosecutor's statement that Petitioner indicated his guilt by offering to make a deal during his interrogation.  Petitioner also argued that appellate counsel was ineffective for failing to raise the issue that the trial court should have excluded, (a) as a plea negotiation, Petitioner's statement to investigators that, "the most I'll do for this is five years," and (b) Petitioner's other statements to New Jersey investigators, in non-compliance with a New York court order, while he was in custody in New York.

The state courts rejected the claim regarding the admissibility of Petitioner's statements to investigators as discussed, <u>supra</u>.  The state courts otherwise denied these claims without discussion.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).  The <u>Strickland</u> standard

for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Again, this Court finds no error in the admission of Petitioner's statements to New Jersey investigators.  Nor does this Court find that the failure to object to the prosecutor's summation was below an objective standard of reasonable professional assistance.  In any event, the evidence of Petitioner's guilt was so compelling that Petitioner cannot establish that, but for the alleged errors of appellate counsel, there is a reasonable probability that the outcome would have been different.  Petitioner is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant

38

has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

V. <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied. An appropriate order follows.

S/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: October 24, 2008